UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Zachary Winspear,                                          Civil No. 06-2112 (PAM/JSM)

                Plaintiff,

v.                                                         **MEMORANDUM AND ORDER**

Community Development Inc.,
Charles Schneider, and Lana Sierra,

                Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Plaintiff Zachary Winspear began working at Defendant Community Development Inc. ("CDI") in 2003. He was promoted several times, ultimately serving as CDI's Community Manager. CDI is a property-management company located in Golden Valley, Minnesota. (Clapp Aff. Ex. A at 57, 67-68.)

Four years before Winspear began working at CDI, Winspear's younger brother committed suicide. Winspear contends that this event nearly incapacitated him and that he spent years grieving for his brother and contemplating suicide himself. Winspear's first job at CDI was personal assistant to CDI's president, Defendant Charles Schneider. Winspear confided in Schneider about his brother's suicide.

In January 2005, Schneider hired his own wife, Defendant Lana Sierra, to work as a

receptionist at CDI. Shortly after Sierra started working, she told Winspear that she had been communicating with his dead brother. She said that Winspear's brother was in Hell and wanted to save Winspear the same fate, and that Winspear should find God so that he did not end up in Hell as his brother did. Winspear was extremely upset by this encounter.

Over the next several weeks, Sierra approached Winspear at least daily with "messages" from his dead brother and exhortations that Winspear needed to find God. She asked Winspear to attend church with her. She often cried as she described the torment Winspear's brother was enduring. Winspear found her repeated admonitions upsetting and asked Sierra to stop talking to him about his brother.

Eventually, Winspear went to Schneider with his complaints about Sierra. Rather than address the issue, Schneider told Winspear that Sierra could communicate with the dead and that Winspear should listen to Sierra and find God.

Sierra's conduct did not stop. Winspear alleges that as the weeks went by her behavior became more demanding and aggressive as she insisted that he needed to find God and find a way to communicate with his dead brother. Winspear spoke with Schneider again, and Schneider again told Winspear that Sierra had the "gift" of the ability to speak with the dead and that Winspear should listen to her. For at least the next few weeks, Sierra continued to pressure Winspear to find God. Winspear offered conflicting testimony about when the conduct stopped, first saying that it stopped sometime in March (Clapp Aff. Ex. A at 113), and later saying that she continued to ask him whether he wanted to go to church

with her "every one to two weeks" after March[1] (Id. at 136).

In August 2005, Winspear quit his job. He claims that after he left CDI and went to work driving a taxi, Ryan Hall, the vice president of the company, repeatedly tailgated him, honking and yelling, and once followed Winspear to a gas station where he yelled at Winspear.

Winspear filed a charge of discrimination with the Minnesota Department of Human Rights ("MDHR") on September 15, 2005. On January 24, 2006, the MDHR dismissed the charge, in part because its communications with Winspear were returned to the MDHR as undeliverable. (Id. Ex. B.)

Winspear filed this lawsuit on May 23, 2006. He contends that he was constructively discharged or essentially forced to quit because of Sierra's harassing behavior. He claims that Sierra's behavior and Schneider's refusal to stop to Sierra's behavior created a hostile work environment actionable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363 et seq. He also contends that Schneider is liable for aiding and abetting discrimination under the MHRA, that the discrimination constituted intentional infliction of emotional distress, and

---

[1] Winspear's Declaration, offered in opposition to the Motion for Summary Judgment, gives yet another story, saying that he experienced "ongoing" and "constant" pressure from Sierra until the day he resigned. (Winspear Decl. ¶ 18.) A declaration cannot be used to contradict sworn testimony in an effort to create a genuine issue of fact, and thus the Court considers only the facts as set forth in Winspear's deposition. See Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988) (court "may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before").

that Hall's alleged tailgating and verbal abuse were in retaliation for Winspear's filing of the discrimination charge, in violation of Title VII and the MHRA. Hall is not named as a Defendant, however, and thus Winspear is apparently claiming that CDI is somehow vicariously liable for Hall's actions.

**DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.    Hostile Work Environment**

Winspear's claim is that he suffered an adverse employment action (constructive discharge) because he did not conform to the religious expectations of his employer. See Sarenpa v. Express Images, Inc., No. 04-1538, 2005 WL 3299455, at *3 (D. Minn. Sept. 8, 2005) (Tunheim, J.) (recognizing reverse religious discrimination hostile work environment claim). To prevail on a claim of reverse religious discrimination, Winspear must first establish:

> (1) that he was subjected to some adverse employment action; (2) that, at the time the employment action was taken, [his] job performance was satisfactory; and (3) some additional evidence to support the inference that the employment actions were taken because of a discriminatory motive based upon [his] failure to hold or follow his . . . employer's religious beliefs.

Id. at *3 (quoting Shapolia v. Los Alamos Nat'l Lab., 992 F.2d 1033, 1038 (10th Cir. 1993)). Because Winspear claims that the hostile work environment resulted in his constructive discharge, Winspear must also show "harassing behavior sufficiently severe or pervasive enough to alter the conditions of his employment," id. at *4 (citing Pa. State Police v. Suders, 542 U.S. 129, 146-47 (2004)), and that Defendants

> (1) deliberately made or allowed his working conditions to become so intolerable that he had no other choice but to resign, or (2) should have reasonably foreseen [his] resignation as a consequence of the working conditions that were created.

Id.

In order to be actionable under Title VII, a work environment must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca

Raton, 524 U.S. 775, 787 (1998).  This inquiry turns on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993).

Winspear may have raised a genuine issue of material fact as to whether Sierra's repeated comments about Winspear's brother suffering in Hell and about Winspear needing to find God constituted a hostile work environment.  However, there is no dispute that her near-daily comments stopped in March 2005, and that thereafter she made only occasional references to the issue.  Winspear did not resign until August 2005.  The four- to five-month lapse in time between when Sierra allegedly stopped harassing Winspear and when he resigned is fatal to his constructive discharge claim.  At the time of his resignation, there is no evidence that his working conditions were intolerable or that CDI should have foreseen his resignation as a result of Sierra's conduct.  An almost 5-month period with no harassing behavior, particularly when the alleged harassing behavior itself lasted only 5 or 6 weeks, belies Winspear's claim that he was constructively discharged.

**C.     Retaliation**[2]

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3. The MHRA similarly prohibits an employer from "intentionally engag[ing] in any reprisal against any person because that person: (1) opposed a practice forbidden under [the MHRA] or filed a charge . . . ." Minn. Stat. § 363A.15. To establish a prima facie case of retaliation under either Title VII or the MHRA, Winspear must demonstrate that he engaged in a statutorily protected activity, that he suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996); Hoover v Norwest Private Mortgage Banking, 632 N.W.2d 534, 548 (Minn. 2001).

Because Winspear was not employed by CDI at the time of Hall's alleged "retaliatory" acts, he cannot bring a claim for retaliation under Title VII or the MHRA. He did not suffer an "adverse employment action" as that term is used in the statutes. It may be

---

[2] Defendants argued that Winspear's failure to respond to their Motion with respect to his retaliation claim meant that he waived that claim. At the hearing, Winspear addressed neither the substance of the retaliation claim nor Defendant's argument regarding waiver. Thus, the Court concludes that Winspear agrees to the dismissal of his retaliation claim. Out of an abundance of caution, however, the Court will address the merits of the claim.

that Hall's actions constitute an independent tort and that a desire to retaliate against Winspear for the filing of a MDHR charge explains Hall's motives, but such a tort is not actionable under Title VII or the MHRA.  Winspear's retaliation claim fails.

**D.     Aiding and Abetting**

Because Winspear's hostile-environment and retaliation claims fail, his claim against Schneider for allegedly aiding and abetting discrimination likewise fails.

**E.     Intentional Infliction of Emotional Distress**

To prove intentional infliction of emotional distress: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) it must cause emotional distress, and (4) the distress must be severe.  Hubbard v. United Press Int'l, 330 N.W.2d 428, 438-39 (Minn. 1983).  The conduct at issue must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  Id. at 439 (citing Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 227 N.W.2d 648, 652 n.3 (Minn. 1979)).  Summary judgment is proper when a party does not meet the high standard of proof needed for an intentional infliction of emotional distress claim.  Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992) (citing Lee v. Metro. Airport Comm'n, 428 N.W.2d 815, 823 (Minn. Ct. App. 1988)).

The standard for the tort of intentional infliction of emotional distress is high: Winspear must show both that the conduct was outrageous and that he suffers from distress "so severe that [he cannot] be expected to endure it."  Hubbard, 330 N.W.2d at 439.  Winspear has not met his burden to come forward with evidence that the distress he suffered

meets the high threshold established by Hubbard. In particular, there is no medical or psychological testimony in the record to establish Winspear's alleged emotional distress. See Langeslag v. KYMN Inc., 664 N.W.2d 860, 870 (Minn. 2003) ("The appropriate method of proving the severity and causation of emotional distress is through medical testimony.") Defendants are entitled to summary judgment on this claim.

**CONCLUSION**

Winspear has failed to raise a genuine issue of material fact on any of his claims. Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 38) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Wednesday, April 9, 2008

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge